IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| THOMAS MCGOVERN, | CV 12-00101-H-DLC-RKS |
|---|---|
| Plaintiff, | |
| vs. | ORDER |
| MIKE FERRITER, et al., | |
| Defendants. | |

FILED

MAY 14 2014

Clerk, U.S District Court
District Of Montana
Missoula

Pending before the Court is Plaintiff Thomas McGovern's Motion for Reconsideration. (Doc. 44.) Mr. McGovern seeks reconsideration of the Court's Order denying his Motion for Preliminary Injunction regarding Defendants' refusal to allow him register his religion as Native American/Wiccan. Defendants were instructed in the Court's Order of March 12, 2014 (Doc. 43) to indicate what burden Mr. McGovern's requested relief would impose on the Prison when Prison policy allows inmates to register as Native American/Christians. Defendants provided a general justification for the religious registration policy but no justification for allowing inmates to register as Native American/Christian but not Native American/Wiccan. As such, Mr. McGovern's Motion for Reconsideration (Doc. 44) will be granted and the Motion for Preliminary Injunction (Doc. 33) with regard to the registration issue will be granted.

1

## I. Standard for Injunctive Relief

Injunctive relief "is an extraordinary remedy never awarded as a matter of right." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24 (2008). To obtain a preliminary injunction the plaintiff must "establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20. Following *Winter*, in *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011), the Ninth Circuit clarified that its "serious questions" approach to preliminary injunctions survives *Winter* when applied as part of the four-part *Winter* test. Thus, once a plaintiff has shown a likelihood of irreparable injury and that the injunction is in the public interest, an injunction is warranted if the plaintiff can further show that there are "'serious questions going to the merits' and the balance of hardships tips sharply towards the plaintiff." *Id.* at 1135.

Where "a plaintiff seeks a mandatory preliminary injunction that goes beyond maintaining the *status quo pendente lite*, 'courts should be extremely cautious' about issuing a preliminary injunction and should not grant such relief unless the facts and law clearly favor the plaintiff." *Committee of Central American Refugees v. I.N.S.*, 795 F.2d 1434, 1441 (9th Cir. 1986) (quoting *Martin*

2

*v. International Olympic Committee*, 740 F.2d 670, 675 (9th Cir. 1984)).

**II. Analysis**

    **A. Likelihood of success on the merits**

Mr. McGovern brings his claims regarding the registration policy under both Religious Land Use and Institutionalized Persons Act ("RLUIPA") and the Equal Protection Clause of the Fourteenth Amendment. The Court finds that Mr. McGovern has showed serious questions going to the merits of his equal protection claim and therefore will not address the RLUIPA issues. Those issues can be dealt with more appropriately through motions practice and/or at trial.

To state an equal protection claim, a plaintiff must allege facts sufficient to establish that prison officials intentionally discriminated against him on the basis of his religion by failing to provide him a reasonable opportunity to pursue his faith compared to other similarly situated religious groups. *Cruz v. Beto*, 405 U.S. 319, 321–22 (1972); *Shakur v. Schriro*, 514 F.3d 878, 891 (9th Cir. 2008); *Freeman v. Arpaio*, 125 F.3d 732, 737 (9th Cir. 1997), *overruled in part on other grounds, Shakur*, 514 F.3d at 884–85. "To succeed on an equal protection claim, a plaintiff in a section 1983 claim must show that officials intentionally acted in a discriminatory manner." *Freeman*, 125 F.3d at 737. "Proof of discriminatory motive . . . can in some situations be inferred from the mere fact of differences in

3

treatment." *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 335 n. 15 (1977).

Mr. McGovern has presented evidence that the Department of Corrections allows Christian inmates to select "Native American/Christian" as a religious preference, presumably allowing Christians to participate in both Christian services and Native American services. (MSP Inmate Religious Preference Statement, Doc. 2-1 at 5.) Mr. McGovern filed a sworn declaration and provided documentary evidence that he requested to be allowed to register as a Native American/Wiccan and be allowed to participate in both Native American services and Wiccan services. He stated in a grievance that he is Native and his family is from the Browning Indian Reservation. He also indicated that he practices Wiccan. (July 13, 2011 Grievance, Doc. 2-1 at 7.) Mr. McGovern was denied his request to register as a "Native American/Wiccan." Instead, he has registered as a Wiccan only and has not been allowed to attend Native American services.

Mr. McGovern has shown that there are serious questions going to the merits of his claim that he is being discriminated against on the basis of his religion. He has shown that he has not been allowed a reasonable opportunity to pursue his Native American faith along with his Wiccan faith when Christians are allowed to practice both Christian and Native American faiths.

4

## B. Irreparable Harm

An "irreparable injury" is a harm that "cannot be adequately measured or compensated by money." Black's Law Dictionary 856 (9th ed. 2009). Constitutional violations, unlike monetary injuries, cannot be adequately remedied through damages and alone can constitute irreparable harm. *Monterey Mechanical Co. v. Wilson*, 125 F.3d 702, 715 (9th Cir. 1997).

Mr. McGovern alleges Defendants are violating his constitutional rights and he is being irreparably harm by not being allowed to practice his religious beliefs, i.e., participate in Native American services. "[I]nmates suffer irreparable injury when they are unable to attend religious services that are commanded by" their religion. *Mayweathers v. Newland*, 258 F.3d 930, 938 (9th Cir. 2001). Inhibition of religious practice is a constitutional injury that cannot be adequately remedied through damages. To the extent Mr. McGovern is likely suffering and will likely continue to suffer injuries arising from the inhibition of his religious practice, his injuries are irreparable. Mr. McGovern indicates he has been forced to modify his behaviors regarding religious practices for more than three years–time he cannot get back and he continues to be harmed by the current religion registration policy. (McGovern Reply to Resp to Mtn for Reconsideration, Doc. 47 at 7.) Everyday that the prison does not allow Mr. McGovern to participate in Native American

5

services, he suffers injuries which cannot be undone. Mr. McGovern has established irreparable harm.

### C. Balance of the Equities

In its prior Order, the Court questioned what the burden would be, if any, of allowing Mr. McGovern to attend both Wiccan and Native American services since Christians are allowed to attend both Christian and Native American services. (March 12, 2014 Order, Doc. 43 at 4.) In response, Defendants provided a general justification for the overall registration policy. Defendants provided evidence that Montana State Prison has a compelling interest in prison security, a fundamental element of which is controlling inmate movement and assembly. Since the Religious Activities Center is a location at which inmates from high and low security portions of the prison meet, controlling the movement and assembly of prisoners is key to insuring the safety and security of the prison. (Response to Mtn for Reconsideration, Doc. 46 at 5 citing Wilson Aff., Doc. 46-1 at ¶10.) In order to insure that security is maintained at the Religious Activities Center, therefore, the Prison broadly limits attendance at religious activities to practitioners of a specific faith. (Response to Mtn for Reconsideration, Doc. 46 at 5 citing Wilson Aff., Doc. 46-1 at ¶12.) Defendants explained that the Prison asks inmates to declare a single, primary religious preference, in the interests of

6

efficiency of controlling groups of inmates' movement and assembly, and not to limit an inmate's exercise of religion. (Response to Mtn for Reconsideration, Doc. 46 at 6.)

The Court can appreciate the importance of controlling groups of inmates' movement, but Defendants did not address the Court's question–what burden, if any, would be placed on the Prison by allowing Mr. McGovern to attend both Wiccan and Native American services since Christians are allowed to attend both. Defendants ignored the central issue in this case in that the Prison appears to only ask non-Christians to declare a single primary religious preference. Christians can declare two preferences–both Christian and Native American.

This is an equal protection claim and the Prison is giving special treatment to Christian faiths over non-Christian faiths. There being no evidence of any burden being placed on the Prison in allowing Mr. McGovern to attend both Wiccan and Native American services when Christians can attend both, the balance of the equities tips sharply in favor of Mr. McGovern.

Defendants also argue that the burden on Mr. McGovern is "self-imposed" in that individuals who profess more "idiosyncratic religious needs" can use Operational Procedure 5.6.1 III.B which allows them to send a request to the Religious Activities Coordinator to request a specific religious practice

accommodation. The Religious Activities Coordinator will then bring this request to the Religious Issues Committee, which will then work to determine whether, and to what extent, to approve the accommodation. MSP then codifies approved accommodations in policy, schedule, procedure, or database entry, as appropriate. (Response to Mtn for Reconsideration, Doc. 46 at 6.) Defendants argue inmates may declare any religion and request any accommodation–assuming the authenticity of their beliefs. This would allow, they argue, an inmate who claimed the Wiccan religious preference to attend Native American ceremonies. (Response to Mtn for Reconsideration, Doc. 46 at 6-7.)

But requiring non-Christians to abide by this procedure and not requiring Christians to do the same puts an additional burden on non-Christians and furthers Mr. McGovern's equal protection argument.

Defendants also submit that in the past, some Native American practitioners have voiced strong objections to Wiccan practitioners engaging in Native American practice, inasmuch as the Native American practitioners felt it was disrespectful of their culture. (Response to Mtn for Reconsideration, Doc. 46 at 7 citing Wilson Aff., Doc. 46-1 at ¶25.) A vague hearsay statement that other inmates made objections in the past (although how long in the past is not clear), is insufficient to defeat Mr. McGovern's motion. Mr. McGovern has argued that the

policy in place prior to the current revised version allowed inmates to attend whatever religious services they wanted to. No evidence was presented that Wiccans attending Native American services caused institutional security issues. There are insufficient factual details to make this a valid justification for favoring one religion over all others.

### D. Public Interest

Allowing inmates to practice religion while incarcerated is clearly within the public interest in that Congress specifically passed the RLUIPA to serve such a purpose.

## III. Conclusion

The Prison Litigation Reform Act allows courts to enter an order for preliminary injunctive relief but requires that,

> In any civil action with respect to prison conditions, to the extent otherwise authorized by law, the court may enter a temporary restraining order or an order for preliminary injunctive relief. Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity set out in paragraph (1)(B) in tailoring any preliminary relief. Preliminary injunctive relief shall automatically expire on the date that is 90 days after its entry, unless the court makes the findings required under subsection (a)(1) for the entry of

9

prospective relief and makes the order final before the expiration of the 90–day period.

18 U.S.C. § 3626(a)(2).

The relief described below is narrowly tailored. At this juncture it applies to one person, Mr. McGovern, and it allows only those privileges afforded to inmates who are already allowed to register as Christian/Native American. The Court specifically asked Defendants to address any substantial burden that might be placed on them, but as to the specific relief requested, no explanation was given. No evidence was presented demonstrating an adverse impact on public safety or the operation of a criminal justice system. This preliminary injunction thus complies with the Prison Litigation Reform Act.

Pursuant to 18 U.S.C. § 3626(a)(2) this preliminary injunction will automatically expire 90 days after its entry. The Court will consider requests to renew or extend the preliminary injunction should this matter not be resolved prior to that date.

IT IS ORDERED that Mr. McGovern's motion for reconsideration (Doc. 44) is granted. Mr. McGovern's motion for preliminary injunction (Doc. 33) with regard to Mr. McGovern's request to register as both a Native American and Wiccan is granted. The Court enters the following preliminary injunction:

1) Defendants shall allow Mr. McGovern to participate in Native American and Wiccan services at Montana State Prison and its regional facilities.

2) Defendants shall afford Mr. McGovern all privileges allowed to Native Americans that have a duel classification, which includes, the ability to purchase and possess religious items on both the Native American religious items list and the Wiccan religious list.

Dated this 14th day of May, 2014.

/s/ Dana L. Christensen
Dana L. Christensen, Chief District Judge
United States District Court